17-40796, Lawrence C. v. Lewisville Independent School District, and we'll hear from Mr. Whitman. May it please the Court. Plaintiff is a young adult with disabilities. At the time of the due process hearing below, during the 2014-2015 school year, she was 21. She was struggling mightily in the Lewisville Independent School District with even the most basic hygienic and personal care tasks. Her parents believed this was in part because she was autistic and the school district had failed to diagnose her with autism and therefore had failed to develop an appropriate program for her. There was a due process hearing April 22-23, 2015. The hearing officer in his decision determined that the school district had indeed failed to determine that plaintiff was autistic but that she had in fact received a free appropriate public education from the school district. The plaintiff petitioned to the district court for attorney's fees. The district appealed the decision that the hearing officer had made in favor of the plaintiff. Now, as I've said, the plaintiff was 21 years old at that time. The 2015-2016 school year was actually her last year at the district, her last year that she was eligible for education in the district. So I think it's my duty to tell the court now that I believe this case is actually moot. But I will go on with my argument. I don't think that there are any actual live issues before the court. You're appealing the denial of an award of attorney's fees. Is your claim for attorney's fees moot? Right, and it was my understanding up until very recently that that would be enough to constitute a live controversy. But pursuant to the Fifth Circuit case Doe v. Marshall, which is 622 F. 2nd 118, the denial or availability of attorney's fees is actually not enough to keep a live controversy before the court. That if the substantive issues are no longer in play, the issue of attorney's fees is not enough to save the case from mootness. That's a pretty old case if it's F. 2nd, is that right? That's right. It's a 1980 case, but I have not found any other case that renders that no longer valuable at this point. I would be happy to submit supplemental briefings. So when did your client graduate? You said it was the graduation. What is it that moots the case in your view? So my client actually left Lewisville Independent District in October of 2015. But I don't believe it was her act of leaving that rendered the case moot, because she still could have come back, technically speaking, until the end of the 2015 to 2016 school year. But at the end of the 2015 to 2016 school year, which was before even the district court below made its decision in 2017, that was the end of her eligibility to receive services from Lewisville Independent School District anyway. So she wasn't, after that point, the issue of whether she was autistic or not for purposes of developing an individualized education program. I guess what you're saying is this isn't a situation where the attorney's fees are for something that achieved a matter, and then now that's being appealed and that's still in play. This is where the attorney's fees would be because we would remand for a free, appropriate public education that now can't be given. The Doe v. Marshall case indicates that regardless of what the attorney's fees are for, the – Well, I'm sorry. I haven't – you know, I don't buy into the notion that if the attorney's fees were awarded, and we're debating that, that that's not something that can be considered. I do understand the concept that for you to be a prevailing party, you had to have won something, and the winning something would be getting a new set of plans for Lauren C., which now can't happen. It actually did happen. So when Lauren C. prevailed at the hearing officer decision, there was a September 2015 – But the school board put that – I mean the school district put that out. Well, right. It was an implementation org committee meeting. So in other words, the school district did develop an IEP. It used the autism supplement, as the hearing officer had indicated, and of course the school district continued to disagree at that org committee meeting that there was any – that Lauren was autistic. The school district continued to insist that she only had intellectual disabilities, but it did implement the hearing officer decision. And so to that extent, at that point, plaintiff was a prevailing party in the sense that she got what she asked for. She got the IEP that was designed in the way that the hearing officer had articulated. And then the hearing – so the district court later on indicated that the hearing officer had been inappropriate in determining that the school district should have had to do that because the district court determined that whether or not she was autistic wasn't really relevant to whether she received a free and appropriate public education. And so the district court in 2017 ruled that the hearing officer's decision in 2015 was improper, but by that time it was already moved, at least according to Dover's Marshall. So why are we just now hearing this? I beg your pardon? Why are you raising this point now? I was raising this point now because I believe it's my duty to the court to raise the subject matter. Why now instead of saying that the district court's decision was moved? Why did I not make the argument before the district court? Yeah. Because it never occurred to me that attorney's fees wouldn't keep a decision alive, so it was only within the last day or two. Okay, so this just came up. This just came up. Okay. It never occurred to me that subject matter jurisdiction was an issue in this case, but when I realized that it might be based on the Dover's – No, and I appreciate your honesty with the court. We'll take a look at the case, and we'll see where we end up. But if you want to – Excuse me. I'm sorry. If you want to address something else, go ahead. Attorney's fees is the only issue that – that's the only relief you're asking for here, is that right? That's correct. From the plaintiff's point of view, the only live issue that plaintiff is asking for is attorney's fees based on it having been a prevailing party before the administrative hearing officer. But – okay, so let's back up. Assuming, arguendo, we have jurisdiction, the hearing officer found what it found, but then the district court reversed that. If the district court properly reversed that finding, you're not the prevailing party. Well, normally speaking, if a case is found to be moot, and I'm just going back to the Dover v. Marshall case, I'm assuming that that's standard law, and then also this is based on Arizonans for Official English v. Arizona in the Supreme Court 1997 case. What normally happens is if a case is mooted out while an appeal is pending, then the lower court, the district court decision below is vacated. Now, technically speaking, of course, according to Dover v. Marshall, that does not mean that the attorney's fees issue is also vacated because if you were a prevailing party at that time while the case was still alive, then you're a prevailing party for purposes of attorney's fees. But I don't think that's an issue that need trouble to court right now. You know, it occurs to me that we probably should have some supplemental briefing on this because this seems a little catch-as-catch-can to me, which is not typically how I like to handle a case. And that's not a taking away from your need to be honest with us, and I'm greatly appreciated in all of that. Why don't you tell us anything that you think? If, in fact, we could consider the attorney's fees issue, if the mootness argument did not prevent that, let us know what you have to say on that, and then I'll put together a supplemental briefing schedule, and the clerk's office will aid me with getting that information out. Thank you, Your Honor. Thank you. The district court below held that LISD did not have an obligation to make an appropriate determination as to plaintiff's eligibility category. Rather, the district only had the obligation to provide a free and appropriate public education, and consequently, because it had done so, it had no further obligation to diagnose the plaintiff's autism correctly. Now, the district court did analyze whether or not the plaintiff had received a free and appropriate public education from Lewisville Independent School District and determined that it had. It agreed with the hearing officer that Lewisville Independent School District had done that. Part of the reason why the district court reached this conclusion is because the plaintiff, according to the district court, had made some progress. And the words that the district court used in making that determination was that the district court said that the IDA requires only the basic four of opportunity and some meaningful benefits more than de minimis. Now, also in 2017, right around the same— The Supreme Court has now changed that standard? That's exactly right, Your Honor. And one of the contentions that the district has made in this matter is that Andrew F. didn't really change what this court has done with respect to that. But I would contend that the Supreme Court expressly reversed the merely more than de minimis progress from year to year standard and that when the district court below here says that, well, plaintiff here did all right because the IDA requires only the basic four of opportunity and some meaningful benefits more than de minimis, that's using the very same standard that the Supreme Court rejected in Andrew F. In fact, what Andrew F. said is you can't just use some sort of basic four and then say, well, as long as you got a little bit further up from that basic four, no matter who you are, no matter what disability you have, you're doing okay as far as what the IDA requires. No, what Andrew F. said, what the Supreme Court said to Andrew F. is you have to know who you're dealing with. You have to understand what the child is all about that you're dealing with before you even articulate any standard. You have to have meaningful progress for that child. You have to know what kind of disabilities are involved here. You have to know what the unique needs of that child are. If it's a hearing-impaired child such as was the case in Raleigh, that's different than when you're dealing with a child with autism such as was the case in Andrew F. So you have to know what the unique needs of that child are. Could you help me with how does the construction part under the child find? I beg your pardon? How does the construction part under Part B under child find? This is the part that says nothing in this chapter requires that children be classified by their disability so long as each child who has a disability, et cetera, et cetera, et cetera. The construction part, are you familiar with that part of the child find provision? Right. How does that impact your argument about the failure to diagnose? Well, I think that as far as the child find, for 20 U.S.C. 1412A3A, for example, all that says is procedurally that the school district has to or the state of Texas has to ensure that all children with disabilities who are in need of special education are identified, located, and evaluated. But when you turn to 1412A4 where it says four children so identified, the state must develop an individualized education program to address their special education needs. I think that's the operative part. That's where child find, you know, I think that's what the courts are using to say, all right, yes, the child find statute or the provisions of the IDA are procedural in part, but they don't make any sense unless you couple them with what it says in 1412A4 to say, okay, what's the whole purpose of developing this individualized education program? It's to address their special education needs. And so you have to understand what those needs are to determine, you know, how child find applies. It doesn't make sense to say that, you know, okay, we found that Eddie over here has a physical disability, is in a wheelchair, and we're going to address that. Well, we totally overlooked the fact that Eddie's also autistic. That isn't what happened here. I mean, the disabilities that they were finding were parallel, if you will, with the autism finding. It wasn't like, oh, he needs help hearing, but he also needs help mentally, right? Well, that's, of course, the district's argument. The district's argument is that it is irrelevant whether you talk about somebody with an intellectual disability or if you talk about somebody with autism. I think that the way that the district actually talks about that, and you can look at Volume I of the transcript from 168 to 169, the Dr. Key, who is the key figure, no pun intended, who is the central figure in the district's analysis of Lawrence's autism, she says, look, the eligibility determination was irrelevant to plaintiff's education because she didn't have autism. But if she did have autism, it would have been relevant. That doesn't really make any sense. The district's claiming that it didn't make any difference whether she had autism or not, but the only reason they say that is because they don't think she did have autism. When you look at the 19- I'm sorry. You've reserved time for rebuttal. Your time is up. Oh, am I? Okay. Ms. Walker, I don't know if you're hearing for the first time about this mootness issue, but I just looked up the Doe case, and what it says is a determination of mootness of the merits of the case neither precludes nor is precluded by an attorney fee award, and thus the attorney fee award is separate and can still be decided, and so they vacated the preliminary injunction because the injunction took place after the child had graduated but remanded for determination of attorney's fees. So I think the attorney's fees issue is still alive, but I'm interested in your thoughts and whether this is hitting you somewhat cold, as it is me. It is absolutely hitting me cold, Your Honor. I am caught completely flat-footed on the issue of whether the case is rendered moot. What I would say at first blush, just listening to what you just read to me and Mr. Whitborton's argument on those issues, is that it doesn't make sense to me that the district would not have the ability to appeal an erroneous hearing officer's decision and then have a district court take that decision up and then come up to this court because if the district doesn't have that ability, then essentially plaintiff would end up as prevailing party and the district would have no ability whatsoever to challenge that, which is what we did here because opposing counsel and plaintiff are arguing that they're the prevailing party because they won, if you will, on the issue of whether she was a student with autism. But Doe was involving apparently some sort of injunction about a child playing football and the child had already graduated from high school so wouldn't be eligible to play football, so the injunction was clearly moot in joining the school to prevent them from stopping him from playing football. But the issue of attorney's fees, at least, whether he was a prevailing party, I guess your argument would be we would still have to look at whether the hearing officer's determination was correct for purposes of the attorney's fee, even though the merits of that might be moot. In other words, whether she now deserves a different IEP or deserves an autism diagnosis, that itself might be moot, but whether they were properly deemed a prevailing party maybe isn't. I don't know. I'll have to look at this in more detail. But at least the general subject matter of attorney's fees, I think, is still alive long enough for you to say something about it. How's that? And then we're going to do the supplemental briefing. I think that's fair, Your Honor. So if we're assuming that the court has jurisdiction over this case because it's not, in fact, moot, I think that there are two issues in front of the court, and I think they're very easy. The first is what you were just discussing with Mr. Whitburn, which is the child find issue. And Judge Duncan pointed it out. The statute says that you do not have to identify students by their disabilities. It's not about what label you put on a student. It's about what programming you provide to a student. It says that. So what it specifically says is nothing in this chapter requires that children be classified by their disability. Explain that to me. Why the word classified? So when looking at the case law, when you're trying to determine classification, what the courts have said or the courts that have looked at this essentially use classification as identification. So I would say that they use those two words interchangeably. And so whether you use the word classification or identification, the point is when you have some kind of disability, such as autism and an intellectual disability, those two overlap, and there are characteristics of each that could go either way. And so the purpose of the IDEA and when Congress passed it was not so courts were getting into arguments with plaintiffs and school districts between whether the student is properly qualified as a student with autism or properly qualified as a student with an intellectual disability. The purpose of the IDEA is to make sure that we're giving kids a free, appropriate public education. So if there's nothing in the IDEA that requires us to properly classify them and not what disability they have, then it follows that there's nothing in Child Fund that requires us in this case to properly identify her as a student with autism. I mean, it could matter in the wheelchair example. Absolutely. I could come up with several examples where it would matter. If you've got a kiddo who has some kind of hearing impairment, that they also perhaps have autism, and we say, but we tested them and we found the hearing impairment and we've programmed that. Well, nothing about the hearing impairment programs to a kiddo having autism. But there's no argument here that we haven't identified her or evaluated her, I should use that word, in all areas of suspected disability. Let me ask you this. I mean, getting to the sort of nub of prevailing party, is it accurate that the only real change in the IEP was adding the autism diagnosis? It didn't change, shall we say, the substance of it? It didn't change how much help she was getting and all of that? That's absolutely right, because when you look at what the school district did in the testimony in the administrative record of the record on appeal that's before the court, is that even though they didn't formally use the autism supplement, the autism supplement is considered when the school district is creating an IEP for a student. All of the things that are in an autism supplement are considered for all students. Parent involvement, parent training, socialization, things like that. So even though the district did not find that she was a student with autism, they were still programming towards that. They were still looking at the autism supplement. They were still providing her with ABA therapy. They were still doing all of those things, which is why when she went to her outside IEE, her independent educational evaluation provider, that provider said, I'm not going to waste time critiquing the district's full and individual evaluation or the school district's IEP. That can't be improved upon, because we were doing exactly what we were supposed to be doing, and we were programming to her needs. So then even if we were to sustain the hearing officer's view that she had autism, your argument would be she wasn't a prevailing party because it added nothing substantive to the actual IEP. That's absolutely right. Nothing changed. If we went down that road, you're absolutely right. Our argument would be that there's been no material change between the parties, because her IEP, when it came out of that September meeting after the hearing officer's decision, the only thing that changed was now instead of saying she's a student eligible for special education and related services as a student with an intellectual disability, it said she's now eligible for special education as a student with autism. They formally looked at the autism supplement, but they made no changes because the portions of the autism supplement— They're already doing it. That's exactly right. They already did it. She's already having an ABA therapy. They were already doing parental training. So they were already doing everything they needed to do. These cases are so difficult because the parents rightly and justifiably are just trying to do everything they can to do right by the child. Absolutely. I agree with that 100%. Did the parent ask the district to provide additional treatment that they were not giving? No. As a matter of fact, when you look at the FIE, the independent educational evaluator said that Elsie's mother made no complaint about the type and quality of services provided by the district. Rather, her concern was over the diagnostic label. Did she explain why she was concerned about that? There was some evidence in the underlying due process hearing that perhaps they were looking towards the future and perhaps needed that particular label in order to obtain services. But that wasn't really the focus of the due process hearing. The focus of the due process hearing was whether she was, in fact, a student with autism, whether the district violated their child find obligations. So maybe she would be eligible for other government programs down the road. Right. Yeah. Okay. Anything else? And we will certainly—the clerk's office will send a briefing notice on the moteness issue. I think I just want to briefly touch on the FAPE issue. Okay. I would argue that the court doesn't even have subject matter jurisdiction to get to that issue. I was going to ask why we would be considering that issue. Is it undisputed that Lawrence C., the applicant or whatever the proper name is, didn't bring a claim timely? That's correct, Your Honor. So why would we be—I guess that's what you want to— That's exactly right. So what happened was the district, after plaintiff requested prevailing party status, the district appealed the hearing officers, or what we believe to be the erroneous portions of the hearing officers' decision. And they turned around and then filed an amended complaint and appealed for the first time the hearing officers' decision. So the district, the school district, filed a motion to dismiss, claiming that the court didn't have jurisdiction because it wasn't timely filed. And the district court agreed with us and dismissed their appeal, but then stated they could use it as a defense. I was going to ask you about the reasoning of the district court, if you could critique it, assuming you have a criticism of it. I don't follow it, so I just wanted to hear your view. So we obviously believe that the district court got it correct that it wasn't timely filed because they filed outside the 90-day statute. It's not a statute of limitations. It's an appeal timeline. So it's much akin to appealing a district court decision to this court. So they had a 90-day timeline to appeal. So the district court absolutely got that correct. But then he said he could use that as a defense. And if I had to guess, just using my crystal ball and trying to figure out what the district court was doing, if this court found, if it had been appealed, which it hasn't, but if this court found that there was a timely appeal of the hearing officers' decision, by analyzing the FAPE issue, then this court has something to look at as opposed to remanding it back down for the FAPE issue. So judicial economy, I don't think the court should have ever gone there because once the hearing officer made the decision that the FIE was appropriate and we did, in fact, provide FAPE, the issue becomes whether there was a child fine violation and there wasn't. And we provided FAPE, so that's kind of the end of the story right there. Okay, thank you. Thank you so much. We appreciate it. Thank you. Mr. Whitburn, your rebuttal. The 19 Texas Administrative Code 89.1055E mandates the Texas Autism Supplement. It mandates that the school district consider 11 items. Now the district has just said that they always consider all of these 11 items with respect to every child. However, I think it matters whether you consider these items believing that a child is autistic or whether you consider these items believing that a child is something else. You know, it might could, but it apparently didn't hear. And I'll get to that in a second, Your Honor. Let me make one more point, though. The autism supplement was never included in any of the IEPs before. And one of the things that the Texas legislature also mandates in 89.1055F is that any time you're not going to do one of the things in the 11 items that you have to give a basis for why you're not doing that. Well, that was never the case in any of the IEPs up until this last one. Now, it is true, Your Honor, as the district just pointed out and as you're asking about now, that in the September 2015 IEP that the district did not make any changes based on this autism diagnosis. But you have to understand the context of this as well. We're still in the middle of litigation. You've got all of these district members of the ARD Committee who have a vested interest in not saying that the hearing officer was correct and not saying that they should have done something else. All of the ARD Committee... But you haven't really pointed to anything that they did wrong other than not labeling her autistic. Well, I think what they did wrong, among other things, is that they didn't provide her ABA treatment. And one of the things that the district does, and I think they prevaricate on this, is they say, well, sure, we provided ABA treatment. We did things like we provided feedback. That's an ABA methodology. We provided prompting. That's an ABA methodology. But ABA is not a series of different methodologies like feedback or prompting. You look at prompting, you do that whenever you're going to teach a child anything. You look at feedback. What teaching methodology would not involve giving feedback? When you talk about collecting data, is there any teaching methodology that doesn't involve any collection of data? Well, ABA is not just a series of sort of random strategies like, oh, give them some feedback. ABA is an actual concrete methodology. In order to get a child from point A to point B, you break down into the smallest possible increments. You reinforce that child until they get through that first increment. If they can do it successfully, you move on to the next increment. At every stage, you're collecting data methodically, and if the data doesn't show that there's any progress, you move back a level. If the data shows that you're moving forward, you keep moving to the next increment, and it recycles. It's a constant data gathering, constant reinforcement methodology. It's a very, very concrete idea. It's not just, oh, we'll give them some feedback. That's something in ABA. That's an ABA treatment methodology. Not at all. So when the district says that they didn't get that, oh, you know, there's nothing that we didn't do, that's what they're pointing at. Oh, we gave them some feedback. We collected data twice every nine weeks. But that's not ABA. When the parents actually did put Lauren in TeachMe, which is an ABA treatment program, 2014-2015, things turned around dramatically, and then she really started making progress, because that is an ABA treatment methodology. That's what they do. That's not at all. But you didn't seek reimbursement for that. We did not seek reimbursement for that, no. No, we did not. But in terms of answering the question of what should have been done that wasn't done, that's what should have been done. Now, in answer to Judge Davis's question as to, well, why wasn't the mother complaining about that all the way along? Why weren't they up in arms about this? Parents don't always know. I mean, one of the things that happens in these due process proceedings is that you start getting expert witnesses up there. You start getting into the brass tacks of the matter. The parents are doing a lot of learning during the entire due process proceeding. They're starting to understand more about what their child was able to do or not able to do and what should have been happening all along. The fact that they didn't before that know that there should have been ABA treatment doesn't mean that there shouldn't have been ABA treatment. The IDA puts the responsibilities and obligations on the school district to figure these things out. No one was implying that the parents should be blamed. Well, understood. I just wanted to clarify that. Let me ask you this. You know, to me, this is all very hypothetical, ABA steps, but I'm not hearing any specific things that the district should have done that it wasn't doing. Well, again, Your Honor, in 19 Texas Administrative Code 89.1055E, it explicitly lists ABA treatment methodology as something that the district should consider. Now, you're going to take all the meaning out of that if it's okay to just say, well, you know, we're considering that and we're giving the child that if we do some prompting along the way. As long as we give the child some feedback, we're doing ABA treatment. Now, the Texas legislature understood that autism is a very specific kind of disability that requires very specific kinds of steps, or at least it requires the school district  ABA treatment methodology is a very specific kind of methodology, and the district didn't really consider it and certainly didn't employ it. Okay. Thank you very much. We have y'all's arguments, and we appreciate your time.